IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KAREN REYES, on her own behalf and on behalf of her minor son, EVAN REYES, <br><br>and<br><br>WLADIMIR RAINGEVIRTZ,<br><br>      Plaintiffs,<br> v.<br><br>MCDONALD'S CORPORATION,<br><br>      Defendant. | Case Nos. 06 C 1604<br>     06 C 2813<br><br>Judge Virginia M. Kendall |

MEMORANDUM OPINION AND ORDER

Plaintiffs Karen Reyes and her minor son, Evan Reyes, filed a class action against McDonald's Corporation ("McDonald's") in the Cook County Circuit Court of Illinois for violations of the 815 ILCS 505/2, the Illinois Consumer Fraud and Deceptive Practices Act ("CFA"), and breach of express and implied warranties, all in connection with a public statement made by McDonald's correcting the fat and calorie contents in McDonald's french fries. After McDonald's removed the action to federal court and filed a Motion to Dismiss, the parties stayed briefing by agreement pending transfer of a related class action case filed by Wladimir Raingevirtz ("Raingevirtz" and together with the Reyes family "Plaintiffs") for violations of the New York General Business Law §§ 349-350 ("GBL"), breach of express warranty, and breach of express and implied warranties. McDonald's now moves to dismiss Plaintiff's joint Amended Complaint on two separate grounds: that Plaintiffs have failed to plead the elements of their claims pursuant to Federal Rule of Civil Procedure 12(b)(6), and that the state law actions are preempted by the Nutrition Labeling in Education Act, 21 U.S.C. §§ 341 *et seq* (the "NLEA").

Plaintiffs' Allegations

The following facts are taken from Plaintiffs' Amended Complaint and are accepted as true when deciding a Motion to Dismiss. Plaintiff Karen Reyes and her 12-year-old son Evan are residents of Illinois. Plaintiff Raingevirtz is a resident of New York. McDonald's is a Delaware corporation with its headquarters in Illinois. McDonald's owns and franchises fast-food restaurants throughout the United States, and sells french fries, among other items. All processors of McDonald's french fries must prepare them according to McDonald's recipe.

McDonald's has published the fat and calorie content of its foods, including french fries. McDonald's publishes its representations about fat and calorie content through brochures that are available in restaurants and through its Website.

With respect to the french fries prior to February 8, 2006, McDonald's had represented that: (i) the trans fatty acid content of its large fries was six grams; (ii) the total fat content of its large fries was 25 grams; and (iii) the total calories in a serving of large fries was 520. On February 8, 2006, McDonald's modified its representations via press release stating that: (i) the trans fatty content of its large fries is eight grams; (ii) the total fat content is 30 grams; and (iii) the total calorie content is 570.

Prior to the lawsuit, Plaintiffs patronized McDonald's at least three to four times per month, and frequently purchased french fries. Plaintiffs knew about McDonald's representations with respect to its french fries, and claim that they would have modified their consumption of the french fries had they known about the correct information.

Motion to Dismiss pursuant to 12(b)(6)

When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept the allegations set forth in Plaintiffs' Amended Complaint as true and all reasonable inferences should be drawn in favor of Plaintiffs. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Dismissal of Plaintiffs' Amended Complaint is proper only if it appears beyond doubt that Plaintiffs can prove no set of facts that would entitle them to relief. *Lifanda v. Elmhust Dodge, Inc.*, 237 F.3d 803, 805-06 (7th Cir. 2001). A plaintiff need provide only a short and plain statement showing that he is entitled to relief; if the plaintiff pleads additional facts, however, the defense may suggest that those same facts show that the plaintiff is not entitled to the relief he seeks. *McCready v. Ebay, Inc.*, 453 F.3d 882, 886 (7th Cir. 2006).

*Count I - Illinois Consumer Fraud and Deceptive Practices Act*

The Illinois CFA prohibits the "misrepresentation or the concealment, suppression or omission of any material fact" in the course of commerce. 815 ILCS § 505/2. In order to state a claim for violation of the CFA, Plaintiffs must allege that: (1) McDonald's is engaged in a deceptive act or practice; (2) McDonald's intended that Plaintiffs would rely on the deception; (3) the deception occurred in the course of conduct involving trade and commerce; (4) Plaintiffs were injured; and (5) McDonald's conduct proximately caused Plaintiffs' injury. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005); *accord Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 575-76 (7th Cir. 2001). Actual reliance is not required to establish a claim under the CFA. *Cozzi*, 250 F.3d at 576 (reversing district court for dismissing a claim for lack of detrimental reliance). The CFA is a consumer fraud statute, and as such the complaint must be pled with specificity. *See Avery*, 835 N.E.2d at 843, *citing Connick v. Suzuki Motor Co.*, 675

N.E.2d 584, 593 (Ill. 1996); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). "While [Rule 9(b)] does not require a plaintiff to plead facts that if true would show that the defendant's alleged misrepresentations were indeed false, it does require the plaintiff to state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992).

Plaintiffs have plead their CFA claim with sufficient specificity to survive a motion to dismiss. Plaintiffs have alleged: (1) the date on which they discovered the alleged deception; (2) they read and relied upon the nutrition information posted by McDonald's prior to consuming any McDonald's products; (3) they would have moderated their consumption had they known about the actual information; and (4) they were damaged by the realization that they had consumed products that contained higher trans fats, fats, and calories than advertised. Plaintiffs may not be able to sustain their burden of proof that they suffered actual damages as a result of McDonald's alleged violation, but Plaintiffs have pled the element of damages to survive a motion to dismiss.

*Count II - New York General Business Law Consumer Fraud and Consumer Protection*

In order to state a claim under New York General Business Law § 349-350, the state consumer fraud or consumer protection statutes, a consumer must allege: (1) an act or practice directed at consumers, (2) that is materially deceptive or misleading, and (3) that causes actual (though not necessarily pecuniary) injury. *See Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y. 2d 20, 25-26 (N.Y. 1995). Section 350, the consumer fraud statute, requires the plaintiff to plead specific reliance on the misleading claim; but Section 349, the consumer protection statute, does not. *See Stuttman v. Chemical Bank*, 731 N.E.2d 608, 612 (N.Y. 2000). But even under

the more lenient pleading standards of § 349, a plaintiff has not plead injury if his only alleged damage is that he would not have purchased a product but for the alleged misrepresentation. *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 56 (N.Y. 1999). In Count II of the Amended Complaint, Plaintiff Raingevirtz alleges that McDonald's violated the New York fraud statutes solely by "fraudulently inducing consumers to purchase its french fries." Am. Cmplt. ¶ 41. Therefore, Plaintiff Raingevirtz' consumer fraud claim, Count II of the Amended Complaint, is dismissed for failure to plead actual injury under New York law.

*Counts III and IV - Breach of Express and Implied Warranties*[1]

McDonald's also seeks to dismiss Plaintiff's claims for breach of express warranty and breach of implied warranty for failure to provide notice prior to filing suit. Under the Uniform Commercial Code, adopted in both Illinois and New York, a plaintiff buyer pursuing a breach of warranty claim must give the seller notice of the claimed breach or be barred from recovery for breach of warranty. U.C.C. § 2-607; *see Connick,* 675 N.E.2d at 590 (interpreting U.C.C. § 2-607 notice requirement); *Anthony v. Country Life Mfg., L.L.C.,* 2002 WL 31269621 at *3-4 (N.D. Ill. 2002) (same). The notice requirement of § 2-607 "is satisfied only where the manufacturer is somehow apprised of the trouble with the *particular product* purchased by a *particular buyer*." *Connick*, 675 N.E.2d at 590. None of the Plaintiffs have plead that they provided any notice to McDonald's that they believed that their purchases of french fries constituted a breach of express or implied warranty. Plaintiffs argue that because McDonald's knew about the change in nutrition information, Plaintiffs should be excused from the notice requirement. However, "the notice 'of the breach' required is not of the

---

[1] The breach of warranty claims, brought under the Uniform Commercial Code, are identical in both states. Breach of express warranty, U.C.C. § 2-313, is codified at 810 ILCS 5/2-313 and NY CLS UCC 2-313. Breach of implied warranty, U.C.C. § 2-314, is codified at 810 ILCS 5/2-314 and NY CLS UCC 2-314.

5

facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of *buyer's claim* that they constitute a breach." *Connick*, 675 N.E.2d at 590, *quoting American Mfg. Co. v. United States Shipping Board Emergency Fleet Corp.*, 7 F.2d 565, 566 (2d Cir. 1925).

As McDonald's notes, the notice requirement in the U.C.C. embodies a policy decision on the part of the statute's drafters that specifically applies to the case before the Court. The drafters of the U.C.C. contemplated that, by adding a notice requirement, adverse parties would have knowledge of a pending claim and have an incentive to attempt settlement of breach of warranty claims prior to commencement of a suit. *See* U.C.C. § 2-607, comment 4. Plaintiffs filed their suits against McDonald's one day after McDonald's made the announcement that prompted this suit, allowing no time for settlement discussions between the parties. This is precisely the type of suit that the notice requirement § 2-607 is designed to prevent. Counts III and IV of the Amended Complaint are dismissed for failure to satisfy the notice requirement of U.C.C. § 2-607.

## Preemption

McDonald's argues that all of Plaintiffs' claims - fraud claims under the CFA and GBL, breach of express warranty, and breach of implied warranty - are preempted by the NLEA and the regulations interpreting that statute. The NLEA itself has no private right of action. *See* 21 U.S.C. §§ 336, 337. Because all of Plaintiffs' claims have been dismissed except the claim pursuant to the CFA, the Court limits its analysis of preemption to that statute alone.

Title 21 U.S.C. § 343(q) and (r) govern misbranding via nutrition labels and labeling, including the labeling of amounts of fat, trans fat, and calories in food. The next section, § 343-1 "National uniform nutrition labeling," states that:

> (a) [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce –
> (4) any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q) of this title, except a requirement for nutrition labeling of food which is exempt under subclause (i) or (ii) of section 343(q)(5)(A) of this title; or
> (5) any requirement respecting any claim of the type described in section 343(r)(1) of this title, made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title, except a requirement respecting a claim made in the label or labeling of food which is exempt under section 343(r)(5)(B) of this title.

21 U.S.C. §343-1(a).[2] On the basis of this statute and the regulations interpreting it, McDonald's argues that the NLEA preempts private state actions to enforce of nutrition labeling.[3]

1. The NLEA and Restaurants

First, Plaintiffs respond that because restaurants are specifically exempt from compliance with the requirements of § 343(q) and (r), and because those exemptions are again referenced in § 343-1(a), state law claims against restaurants are not preempted by the NLEA. Section 343(q)(5)(A) and 343(r)(5)(B)[4] each exempt from nutrition labeling requirements food which is served in restaurants

---

[2]Section 343-1 permits states to petition the Secretary of Health and Human Services to exempt state and local requirements. 21 U.S.C. § 343(b).

[3]In addition to arguments based upon the relevant statutory and regulatory authority, McDonald's also relies heavily on a prior determination by an Illinois Appellate Court dismissing an action under the CFA on grounds of NLEA preemption. *See Cohen v. McDonald's*, 808 N.E.2d 1 (Ill. App. Ct. 2004). This case is inapplicable to the case before the court, because that case specifically addressed a state law cause of action for nutrition labeling addressed to children under the age of four, an area not regulated by the NLEA at the time of the action. Additionally, the Illinois Appellate Court decided *Cohen* without the benefit of the United States Supreme Court decision in *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), discussed below.

[4] 21 U.S.C. § 343(q)(5)(A) states, in relevant part:
Subparagraphs (1), (2), (3), and (4) [of 343(q)] shall not apply to food – (i) which is served in restaurants or other establishments in which food is served for immediate human consumption or which is sold for sale or use in such establishments, (ii) which is processed and prepared primarily in a retail establishment, which is ready for human consumption, which is of the type described in subclause (i), and which is offered for sale to consumers but not for immediate human consumption in such establishment and which is not offered for sale outside such establishment. . .

21 U.S.C. § 343(r)(5)(B) states, in relevant part:
Subclauses (iii) through (v) of subparagraph (2)(A) and subparagraph (2)(B) [of 343(r)] do not apply

or prepared for immediate human consumption. The exemption set forth in those subparagraphs is carried over into § 343-1(a), which permits states to require restaurants to apply nutrition labels to their food. *See* § 343-1(a).

McDonald's does not dispute that the text of the NLEA creates an exemption for restaurants. Instead, McDonald's argues that it has voluntarily complied with the NLEA and is therefore bound by its rules - and protected by any preemptive effect on state law claims. The FDA regulations interpreting the NLEA, 21 C.F.R. § 101.1 *et seq.*, support McDonald's position that it may voluntarily submit itself to the requirements of the Act. 21 C.F.R. § 101.9(j) - "Nutrition labeling of food" - provides:

> The following foods are exempt from this section or are subject to special labeling requirements: (2) Food products which are (i) served in restaurants, *provided*, that the food bears no nutrition claims or other nutrition information in any context on the label or in labeling or advertising. Claims or other nutrition information subject the food to the provisions of this section. . .

21 C.F.R. § 101.9(j)(2)(i). Therefore, McDonald's claims that although the NLEA does not require restaurants to comply with nutrition labeling requirements, in the event a restaurant chooses to make nutrition claims, it subjects itself to the requirements of the NLEA and the penalties for violations.

It is undisputed that McDonald's places nutrition claims on labels - indeed, Plaintiffs attached the McDonald's nutritional charts that McDonald's posts on its website to their Amended Complaint as support for their claims. *See* Am. Cmplt., Ex. A. It is undisputed that McDonald's voluntarily complied with the NLEA as recognized by 21 C.F.R. § 101.9(j). Because the plain language of §

---

to food which is served in restaurants or other establishments in which food is served for immediate human consumption or which is sold for sale or use in such establishments.

101.9 subjects restaurants making nutritional claims and publishing nutrition labels to the provisions of the NLEA labeling requirements, McDonald's is not exempt from the NLEA.

2. Whether State-Law Claims are "Identical" to the NLEA.

In the alternative, Plaintiffs claim that even if the NLEA covers McDonald's nutrition claims, NLEA § 343-1(a) does not preempt state law claims brought under the CFA. Plaintiffs claim that the recent United States Supreme Court decision, *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), allows them to proceed against McDonald's via the CFA for misrepresentations on labels. While McDonald's agrees that the test set forth in *Bates* is applicable to any preemption analysis of the NLEA, McDonald's asserts that the *Bates* test supports preemption in this context.

In *Bates*, the Supreme Court held that the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") did not automatically preempt state law claims for breach of express warranty and the Texas Deceptive Trade Practices Act. The preemption section of FIFRA prohibits states from imposing any "requirements for labeling or packaging in addition to or different from those required under this subchapter." *Id.* at 443. The *Bates* court held that FIFRA's preemptive language reached "beyond positive enactments, such as statutes and regulations, to embrace common-law duties," but that it did not extend to jury verdicts that might create incentives for a company to add information to their labels, because "incentives" do not necessarily constitute "requirements." *Id.* at 443, 445. The *Bates* court applied a two-part test to determine whether FIFRA preempted state actions to enforce pesticide labeling: (i) whether the requirement was for "labeling or packaging" and, if so, (ii) whether it imposed a requirement "in addition to or different from those required" under FIFRA. *Id.* at 443-44. If the state-law requirements were "equivalent to and fully consistent with" FIFRA, held the *Bates* court, then FIFRA did not preempt state law requirements, even if those requirements did

9

not explicitly incorporate the provisions of FIFRA. *Id.* at 447. The *Bates* court remanded to the Court of Appeals the decision as to whether the common-law duties imposed by the Texas deceptive trade practices statute were "equivalent" to the misbranding provisions of FIFRA.[5]

McDonald's and Plaintiffs agree that the *Bates* test is applicable to analysis of the NLEA, and agree that the first part of the *Bates* test is met in this case. FIFRA and the NLEA both address information on labels and packages, and McDonald's representations at issue in this suit are "labeling or packaging" requirements. Substituting the language of the NLEA preemption provision for the parallel preemption language in FIFRA, the parties disagree as to whether the CFA imposes requirements "identical to" the requirements of the NLEA such that a state law action could proceed under the *Bates* test.

Another district court recently addressed the application of the *Bates* test to a state law deceptive practices claim involving the NLEA. *See Vermont Pure Holdings, Ltd. v. Nestle Waters North America*, 2006 WL 839486 (D. Mass. March 28, 2006) (interpreting the NLEA in light of *Bates*). The district court in *Vermont Pure* court relied upon the definition of "identical" that has been incorporated into pending legislation to modify the FDA:

> the term 'identical' means that the language is substantially the same language as the comparable provision of the [FDCA], and that any difference does not result in the imposition of materially different requirements.

*Vermont Pure* at *5, *quoting* H. Rep. No. 109-379 (Feb. 28, 2006). "The negative pregnant evident from a plain reading of [§343-1(a)] is that states *may* establish requirements that *are* identical to FDA standards." *Vermont* at *5. The *Vermont* court permitted state common law unfair practice claims

---

[5]As of the date of this opinion, there has been no subsequent opinion in *Bates* issued by the Fifth Circuit Court of Appeals.

to proceed because they relied upon state law definitions of a regulated food that were identical to the definition in the NLEA and based their remedies solely in state laws providing private rights of action. *Id.* at *7.

The reasoning in *Vermont Pure* is sound: there is no express provision in the text of the NLEA that indicates that a state common law action seeking to enforce the exact terms of the NLEA is preempted. There is also no requirement under *Bates* that a state expressly adopt the exact language of the NLEA in order to allow a cause of action to proceed. *Bates*, 544 U.S. at 447. McDonald's argues that allowing the CFA claim to go forward will switch the burden of proof from Plaintiffs to McDonald's to show that it complied with the NLEA, whereas any federal action initiated under the NLEA would place that burden on the government entity seeking to prove a violation. Plaintiffs will still bear the burden of establishing that the NLEA was violated because they seek to enforce state common law claims identical to the NLEA. Plaintiffs cannot rest on general allegations of consumer deception alone, because any allegation that McDonald's be required to act in a way that is not identical to the requirements of the NLEA would be preempted. Plaintiffs must be able to show that the allegations are identical to acts deemed misbranding under the terms of the NLEA.

As long as Plaintiffs seek to enforce only the requirements of the NLEA, and nothing further, the holding of *Bates* leads to the conclusion that Illinois CFA claim is not unilaterally preempted as McDonald's suggests.

3. The Impact of the Regulations Interpreting the NLEA

With the general principle that the NLEA does not unilaterally preempt an action brought under the CFA, Plaintiffs' claims in the Amended Complaint are limited on their face by the terms of the NLEA. According to *Bates,* the regulations interpreting the NLEA are also relevant to what

11

state law action may be considered "identical to" the NLEA. *Bates*, 544 U.S. at 453. In instructing the lower court on remand, the *Bates* court offered guidance as to how the lower court might approach the *Bates* analysis of an common-law fraud claim:

> We emphasize that a state-law labeling requirement must in fact be equivalent to a requirement under FIFRA in order to survive preemption. For example, were the Court of Appeals to determine that the element of falsity in Texas' common law definition of fraud imposed a broader obligation than FIFRA's requirement that labels not contain "false or misleading statement," that state-law cause of action would be pre-empted by § 136v(b) to the extent of that different. State-law requirements must also be measured against any relevant EPA regulations that give content to FIFRA's misbranding standards.

*Bates*, 444 U.S. at 453. Therefore, any analysis of the preemptive effect of NLEA on the CFA requires an examination of the regulations governing the NLEA.

According to the FDA regulations promulgated as part of the NLEA, state common law actions via the CFA impose broader obligations than the NLEA. McDonald's raised these regulations in its Motion to Dismiss, and Plaintiffs failed to respond to them. The regulations raise at least two important limits on the claims of Plaintiffs, and result in substantial limitation on Plaintiffs' claims as plead in the Amended Complaint.

First, two of Plaintiffs' three claims regarding misrepresentations pertaining to the french fries are preempted by the NLEA regulation permitting nutrition labeling information to vary by up to 20 percent. 21 C.F.R. § 101.9(g)(5) states in relevant part:

> A food with a label declaration for calories, sugars, total fat, saturated fat, trans fat, cholesterol, or sodium shall be deemed to be misbranded under [§ 343] of the act if the nutrient content of the composite is greater than 20 percent in excess of the value for that nutrient declared on the label.

21 C.F.R. § 101.9(g)(5). To the extent that Plaintiffs seek to employ the CFA to make claims that McDonald's has misbranded its products, Plaintiffs are bound to the tenets of this regulation in stating

12

a claim for misrepresentation. "If a plaintiff pleads facts which show he has no claim, then he has pled himself out of court." *McCready,* 453 F.3d at 888. By Plaintiffs' own representations, they seek to use the CFA to show that the following correction by McDonald's was a tortious misrepresentation: in large fries: (i) the trans fatty acid content was 8 grams instead of 6; (ii) the fat content was 30 grams instead of 25; and (iii) the calories were 570 instead of 520. Am. Cmplt. at ¶ 15-16. According to Plaintiffs, the actual amounts of two of these three figures - those for fat and for calories - were less than 20 percent in excess of the amounts on the nutrition labels. If Plaintiffs were to be permitted to proceed on claims based on those two figures, therefore, they would be seeking to recover under a broader definition of "misbranding" than that provided in the NLEA, resulting in an inconsistent standard for labeling. *Accord Mills v. Giant of Maryland, L.L.C.*, 441 F. Supp. 2d 104, 108 (D.D.C. 2006) (relying on terms of NLEA regulation in determining that a failure to warn claim was preempted because it would result in an inconsistent standard). Therefore, Plaintiffs may not proceed on any of the state law claims to the extent they are based on nutrition corrections that are preempted by the text of 21 C.F.R. § 101.9(g).

Second, restaurants that make nutrition claims have some leeway under the FDA regulations for the methods by which they account for the nutritional value of their food. *See* 21 C.F.R. §§ 101.10, 101.13. Restaurants are permitted to use reasonable measures to establish the nutritional content of their foods, and the use of such reasonable measures, under the regulations, does not necessarily mean that the restaurants' calculations were false or misrepresentative. While McDonald's raised these regulations in its Motion to Dismiss, neither party addressed in any significant detail the standard set forth by these regulations. These regulations bear directly on the

cautioning words of the *Bates* court that state law actions may not impose a broader definition of "falsity" or "misrepresentation" than that defined in the relevant federal law.

## Conclusion

Counts II through IV of Plaintiffs' Amended Complaint are dismissed for failure to state a claim pursuant to Rule 12(b)(6). Count I of Plaintiffs' Amended Complaint survives the motion to dismiss and is not preempted by the NLEA only to the extent that Plaintiffs' action is identical to the requirements set forth in the NLEA. Because this Opinion and Order dismisses all of the claims alleged by Mr. Raingevirtz pursuant to New York state law, Action No. 06-2813 is dismissed.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: November 8, 2006